Itha David BECKER, Hannah M. Kneafsey, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Phillip L. TOIA, as Commissioner of the New York State Department of Social Services, and Robert B. Travis, as Commissioner of the Sullivan County Department of Social Services, Defendants.

No. 77 Civ. 2561.

United States District Court,
S. D. New York.

June 23, 1977.

Mid-Hudson Legal Services, Inc., Monticello, N. Y., Greater Up-State Law Project, Monroe County Legal Assistance, Rochester, N. Y., MFY Legal Services, Inc., New York City, for plaintiffs; David L. Posner, Joan E. Schmukler, David S. Yen, Monticello, N. Y., Rene Reixach, Rochester, N. Y., Ellice Fatoullah and Nancy E. LeBlanc, New York City, of counsel.

Louis Lefkowitz, Atty. Gen. of the State of New York, New York City, William C. Rosen, Sullivan County Atty., for defendant Robert B. Travis.

VINCENT L. BRODERICK, District Judge.

Plaintiffs Itha David Becker and Hannah M. Kneafsey, Medicaid beneficiaries, on behalf of themselves and all other persons similarly situated, allege in the complaint herein that New York State, in enacting and implementing Section 16 of Chapter 77 of the Laws of 1977 of the State of New York (hereinafter "Section 16"),[1] has violated the Equal Protection and the Due Process Clauses of the Constitution, and the federal Social Security Act and the regulations promulgated thereunder, as well as the Social Services Law of the State of New York. Section 16 by its terms mandates the Department of Social Services of the State of New York to impose, upon plaintiffs and other Medicaid beneficiaries, an obligation to make "co-payments" in an amount to be fixed by regulation with respect to purchases of prescription drugs and other medical services and supplies.

Named as defendants in the complaint are the Commissioner of New York State's Department of Social Services, and the Commissioner of the Department of Social Services of Sullivan County. The plaintiffs have moved for a preliminary injunction, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, enjoining the defendants from implementing and enforcing Section

---

1. Section 16 was signed into law by the Governor of New York on or about April 12, 1977, effective May 1, 1977. It is to be codified in Social Services Law § 367–a.6.

16 and the regulations implementing it.[2] I find that there is a decided balance of hardships in favor of the plaintiffs, and that there are at a minimum sufficiently serious issues raised by the complaint as to make them "a fair ground for litigation". *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973). I therefore grant plaintiffs' prayer for a preliminary injunction.[3]

The pertinent portion of Section 16 provides as follows:

> 6. Any inconsistent provision of law notwithstanding, rates of payment for claims for medical and prosthetic appliances, supplies and equipment, dental care and eyeglasses and each separate claim for drugs, furnished to persons twenty-one years of age or over but under sixty-two years of age, shall be reduced in accordance with department regulations by an amount not to exceed the maximum amount authorized by federal law and regulations, except that in the case of each separate claim for drugs such maximum amount shall not exceed fifty cents, as a co-payment amount, which co-payment amount the person providing such care, services, supplies and equipment, or drugs may charge the recipient, provided, however, that no such reduction may be made for any such care, services, supplies and equipment, or drugs provided to any recipient receiving care on an in-patient basis in a hospital as defined in article twenty-eight of the public health law; provided further that the exclusion of individuals age sixty-two or over from the co-payment provision of this subdivision shall apply to the extent consistent with federal law and regulations.

Section 16 pertains to the federal medical assistance program ("Medicaid") which has functioned in the State of New York pursuant to 42 U.S.C. § 1396, *et seq.* (Title XIX of the federal Social Security Act) and Sec. 363, *et seq.*, of the New York Social Services Law. Under Medicaid the federal and state and local governments participate in funding medical aid, but various requirements with respect to such aid are spelled out in the federal law—conformance with those requirements is a condition of federal participation. 42 U.S.C. §§ 1396a, 1396c. *See generally Feld v. Berger,* 424 F.Supp. 1356, 1360 (S.D.N.Y.1976).

Plaintiffs do not allege that federal law prohibits the requirement of co-payments from Medicaid recipients: indeed, co-payment is specifically authorized by 42 U.S.C. § 1396a(a)(14) of the federal statute and 45 C.F.R. § 249.40(a)(3) of the federal regulations.

Plaintiffs do urge, however, that the imposition and implementation of co-payment requirements must conform to federal law in all respects. The thrust of the complaint is that co-payment requirements under Section 16 do not conform in that a) they have been imposed without satisfying notice requirements imposed by federal law; b) Section 16 was proposed, enacted and implemented in the absence of any consultation with a medical advisory committee which, under federal and state law, New York State was required to establish; and c) Section 16 as implemented requires co-payment from some but not all of categories and

---

**2.** Plaintiffs also ask that the defendants be directed to notify all providers of medical supplies subject to the co-payment provisions of Section 16 that implementation of said section is preliminarily enjoined and that they are not permitted to collect any co-payment amounts from plaintiffs and other Medicaid beneficiaries.

**3.** After a hearing on May 25, 1977, I issued a temporary restraining order enjoining the defendants from May 26 to and including June 3, 1977, from taking further steps to implement Section 16. At a hearing on June 3, 1977 good cause was shown for the modification of that temporary restraining order and for its extension for an additional ten days. The order was modified to enjoin the enforcement and implementation of Section 16 up to and including June 13, 1977, with the additional requirement that the State send notice to all social service districts in the State of New York that the co-payment provisions of Section 16 were suspended and that providers were not to charge co-payments for drugs and other medical supplies. At a hearing on June 13, 1977, that order was extended up to and including June 23, 1977.

recipients who pursuant to federal law must be treated equally.

Section 16 by its terms would reduce the rates of payment for medical appliances and drugs, "in accordance with department regulations", by an amount not more than the maximum authorized by federal law and regulations. Under Section 16 the amount of reduction is not to exceed $.50 for each separate claim for drugs. No reduction is to be made for medical services or drugs provided to an in-patient in a hospital. By its terms the co-payment provisions do not apply to persons under 21 or over 61, but the exemption for persons over 61 has been administratively deleted, and persons over 61 are now subject to the co-payment.[4] Also specifically exempted from the co-payment provisions of Section 16 are individuals receiving service on an in-patient basis in a hospital.

A. *Jurisdiction*

■ The threshold question is that of jurisdiction. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3) and (4), as well as 28 U.S.C. § 1331. Since I find that there is jurisdiction pursuant to 28 U.S.C. § 1343(3), the question of jurisdiction pursuant to 28 U.S.C. §§ 1343(4)[5] and 1331 need not be reached.

■ Jurisdiction under § 1343(3) properly lies where a constitutional claim has been raised and is not insubstantial or wholly without merit. *See Lynch v. Philbrook,* 550 F.2d 793 (2d Cir. 1977); *Andrews v. Maher,* 525 F.2d 113 (2d Cir. 1975). Regard-

less of the ultimate resolution of the issues on the merits, plaintiffs' claims are not " 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court . . .' *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–667 [94 S.Ct. 772, 39 L.Ed.2d 73] (1974)." *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). Thus I find that there is a colorable constitutional claim justifying the exercise of jurisdiction pursuant to § 1343(3). Having found that jurisdiction is established under this section on the constitutional claim, I find that it is appropriate to exercise pendent jurisdiction over the statutory claims. *Hagans v. Lavine, supra* at 536, 94 S.Ct. 1372; *Lynch v. Philbrook, supra* at 795.

B. *Class Certification*

■ An additional preliminary question is raised by plaintiffs' motion for class certification. Plaintiffs seek to have certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure a class composed of all persons twenty-one years of age or older[6] who are now or may in the future be eligible for medical assistance benefits in the State of New York and who are not receiving the care, services, supplies, equipment or drugs enumerated in Section 16 on an in-patient basis in a hospital, or on an out-patient basis from a facility or institution having such services, drugs or supplies included in their approved rate.[7]

---

4. The exemption for persons over 61 applies by the terms of law "to the extent consistent with federal law and regulations." After the State Department of Social Services received a letter from the Department of Health, Education and Welfare's regional office on April 20, 1977, pointing out problems under federal law, the exemption for individuals over 61 was not implemented.

5. There can be no jurisdiction, however, under 28 U.S.C. § 1343(4), which provides for federal jurisdiction over claims under any act of Congress providing for the protection of civil rights. The Court of Appeals for this Circuit has specifically rejected the contention that the

Social Security Act was an act providing for the protection of civil rights under § 1343(4). *Andrews v. Maher,* 525 F.2d 113 (2d Cir. 1975).

6. The class for which the complaint seeks certification is described as persons 21 or over and under 62. Since the State has administratively eliminated the Section 16 exemption of persons over 61 from the group subject to the co-payment requirements, the parameters of the proposed class were changed at the first hearing.

7. The group for which plaintiffs seek class certification was not delineated as including those Medicaid beneficiaries who were not out-patients of institutional clinics where the cost of

In order for the class action to be certified, the class must satisfy the prerequisites of Fed.R.Civ.P. 23(a) and (b)(2).

The first requirement of Rule 23(a), that joinder of all members of the class would be impracticable, has clearly been met. There are several hundred thousand persons who will be affected by the State's action and joinder of these would clearly be impracticable.

The second prerequisite of Rule 23(a) is that there be questions of law or fact common to the class. In this respect, there are Equal Protection and Due Process claims, as well as State claims under New York State Social Services Law § 365–c, which are common to all members of the proposed class.

There are also claims under the Social Security Act and the federal regulations which are applicable to the majority of the class members but are not applicable to a relatively small group of people who are "home relief" recipients for whom medical assistance is provided solely under state law.

The existence of this latter group does not necessarily render class action certification undesirable. It is possible that "home relief" recipients constitute a group which can be appropriately certified as a sub-class pursuant to Rule 23(c)(4). See, e. g., *Federman v. Empire Fire & Marine Ins. Co.,* 19 F.R.Serv.2d 480 (S.D.N.Y.1974). Thus plaintiffs are not barred by Rule 23(a)(2) from obtaining class action certification.

Plaintiffs are next required to meet the requirement that the claims of the representatives are typical of the claims of the class. Since the named plaintiffs assert claims which are common to both the proposed class and the possible sub-class, the third requirement is met.

There can be no question that the plaintiffs are adequately represented here. Accordingly, the elements of Rule 23(c) have been satisfied.

Rule 23(b)(2) provides for class actions where the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ." This requirement has obviously been met.

The defendants argue that the issues with respect to Section 16 can be raised and determined without the necessity of a class action. Denial of class action certification on this basis would appear to eviscerate the need for Rule 23(b)(2). *See Rodriguez v. Percell,* 391 F.Supp. 38, 41 n. 2 (S.D.N.Y. 1975). Moreover, "it seems advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole." *Mendoza v. Lavine,* 72 F.R.D. 520, 523 (S.D.N.Y.1976).

Thus I am inclined to grant certification, but shall defer such action pending further consultation with the parties with respect to the sub-division of the proposed class at the conference scheduled herein (see *infra*).

## C. The Challenge to Section 16

### 1. Inadequate and Untimely Notice

Plaintiffs contend that the manner in which the co-payment provisions of Section 16 were implemented violated both the Due Process Clause and the regulations promulgated pursuant to the Social Security Act, 45 C.F.R. § 205.10(a)(4), in that the plaintiffs received insufficient notice of the reduction of benefits and of their rights, if any, to a pre-termination hearing. Consistent with the principle that the statutory claim is to be decided before considering constitutional issues, *Hagans v. Lavine, supra,* 415 U.S. at 543, 94 S.Ct. 1372, I address the statutory claim. *See Dandridge v. Williams,* 397 U.S. 471, 475–476, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

After enactment of Section 16, and pursuant to a directive of defendant Toia, Commissioner of the New York State Department of Social Services, defendant Tra-

the item is included in the reimbursement rate for the institution. Such a delineation should

be included in the description of the class to be certified. *See* 77 ADM–33, dated May 17, 1977.

vis sent notice to Medicaid recipients in Sullivan County advising them of the co-payment provisions of Section 16, which were effective May 1, 1977. These notices were sent to the Medicaid recipients along with the May Medicaid cards on or about April 30, 1977,[8] thus giving them no advance notice. This same procedure has been followed in several other counties.[9] In some instances, Medicaid beneficiaries have been required to co-pay without receiving any notice.[10]

Defendant Toia issued an administrative letter (77 ADM–33) dated May 17, 1977, wherein he set forth a clarification of Section 16. 77 ADM–33 explained that the age ceiling of 61 is no longer in effect. It also added, as a group excluded from the co-payment provisions, out-patients of a facility or institution which includes in its approved rate services, drugs or supplies which would otherwise be subject to co-payment. Annexed to 77 ADM–33 was a sample notice to be sent to Medicaid recipients by local commissioners, informing them that as of May 1, 1977 they would be required to co-pay.[11] A copy of this sample notice letter was received by plaintiff Becker from defendant Travis on or about May 21, 1977—almost

three weeks after the effective date of Section 16 and after Mr. and Mrs. Becker had already, on a co-payment basis, expended money for drugs.[12] On May 19, 1977, William Toby, regional commissioner of the Department of Health, Education and Welfare, advised defendant Toia by letter that proper notice was required of the change contemplated by Section 16.[13]

■ New York State as a participant in the Medicaid program must conform to the pertinent provisions of the Social Security Act and the federal regulations which pertain to those provisions. *See*, e. g., *Feld v. Berger, supra* at 1360. 45 C.F.R. § 205.-10(a)(4) was promulgated by the Department of Health, Education and Welfare ("HEW") in response to *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) to establish the parameters of due process in this area. This regulation mandates, *inter alia*, that timely and adequate notice be given in the event of a decision by a state to "discontinue, terminate, suspend or reduce assistance".

Timely notice is defined as notice "mailed at least ten days before the date . . . upon which the action would become effective." 45 C.F.R. § 205.10(a)(4)(i)(A).

**8.** See affidavit of plaintiff Itha David Becker dated May 18, 1977.

**9.** See affidavit of David L. Posner dated May 23, 1977.

**10.** See affidavit of Cindy Detzauer dated June 2, 1977; affidavit of Norman Goodman dated June 3, 1977.

**11.** The form letter for recipient notification reads as follows:

Dear Medicaid Recipient:

Recently a change was made in the New York State Medicaid Program which requires eligible Medicaid recipients twenty-one (21) years of age and older to be responsible for a co-payment amount of the approved charge for medical, prosthetic, orthotic appliances, supplies and equipment, dental care, eyeglasses and drug prescriptions.

The only exclusions to the co-payment requirement are eligible persons under 21 years of age, inpatients of a hospital, outpatients of a facility or institution having such services, drugs or supplies included in their approved rate and family planning services, drugs or supplies.

A pharmacy provider on or after May 1, 1977 must collect a co-payment amounting to no more than $.50 from the eligible Medicaid recipient for each individual drug prescription including original and refill orders.

Providers of medical, prosthetic, orthotic appliances, supplies and equipment, dental care and eyeglasses on or after May 1, 1977 must collect a co-payment from the eligible Medicaid recipient in accordance with a schedule that represents co-payment amounts to be paid by a Medicaid recipient depending on the approved charge for each specific service or supply. Each provider of service has been sent a schedule of co-payment charges that range from $.50 for an approved charge for each service or supply amounting to $10 or less with a maximum of $3.00 for those services or supplies $5[1] or more.

If you have any questions, please contact ——————— at (Tel. #).

Sincerely,

**12.** See affidavits of David L. Posner dated May 25, 1977 and May 23, 1977.

**13.** See Exhibit to affidavit of David L. Posner dated May 23, 1977.

Adequate notice, in the case of automatic grant adjustments effected by a change in either state or federal law, is notice which includes "a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued." 45 C.F.R. § 205.10(a)(4)(iii).

■ Despite defendant's arguments that the co-payment provisions authorized by Section 16 constitute neither a reduction in benefits nor a grant adjustment, such provisions clearly reduce the benefits to which the beneficiaries are entitled, and I find that they constitute a grant adjustment.[14]

■ The notice given by New York State with respect to the implementation of Section 16 was neither timely nor adequate under the regulations. The State did not give the mandatory 10 day notice prior to the effective date of the statute. Such notice was not only transmitted after the fact, but it failed to include a) the reasons for the action, b) a statement of the specific change of law requiring the action, and c) a statement of the circumstances under which a hearing may be obtained and aid continued.

Defendants maintain that regardless of plaintiffs' right to notice under the regulations, the mailing of timely and adequate notice would have had no effect on the ultimate resolution of the action. This argument fails to take into consideration the fact that under certain circumstances plaintiffs would be entitled under federal regulations to a pre-termination hearing. Thus 45 C.F.R. § 205.10(a)(5) requires an opportunity for a hearing to any applicant "who is aggrieved by any agency action resulting in suspension, reduction, discontinuance or termination of assistance." Although that regulation further provides that "[a] hearing need not be granted when either State or Federal law require automatic grant adjustments for classes of recipients," there is an exception to this provision where "the reason for an individual appeal is incorrect grant computation." Moreover, at a minimum, plaintiffs have the right to have aid continued (subject to recovery) pending a determination at a hearing that the sole issue is one of State or Federal law or policy and not one of incorrect grant computation. 45 C.F.R. § 205.10(a)(6)(i)(A).[15] *See Viverito v. Smith*, 421 F.Supp. 1305 (S.D.N.Y.1976).

Thus the requirement of timely and adequate notice, in the context of the implementation of Section 16, is a meaningful one. On this issue plaintiffs have established probable success on the merits, justifying the granting of a preliminary injunction. *See Benton v. Rhodes*, CCH Medicaid and Medicare Guide, ¶ 28,025 (S.D.Ohio 1976) (inadequate notice); *Robinson v. Maher*, CCH Medicaid and Medicare Guide, ¶ 27,707 (D.Conn.1976) (untimely notice).

### 2. *Failure to Consult Medical Advisory Committee*

Plaintiffs challenge the manner in which Section 16 was adopted and implemented as violative of the Social Security Act, 42

---

14. This interpretation has been adopted by HEW in a letter dated May 19, 1977, from the Regional Commissioner of HEW, William Toby, to Commissioner Toia, Mr. Toby described the imposition of co-payment as a grant adjustment requiring a hearing where there is an incorrect grant computation. See Exhibit to affidavit of David L. Posner dated May 23, 1977. See also, HEW Amicus Brief.

Defendants further argue that even if Section 16 is a grant adjustment, it is not an *automatic* grant adjustment for classes of recipients triggering the notice requirement of 45 C.F.R. 205.-10(a)(4)(iii). This argument is premised upon defendants' position that a co-payment would never be required of an individual who does not purchase a drug or medical device. Defendants argue that the term "automatic" should be interpreted to cover only those situations where no action on the part of a recipient is necessary to cause the intended action to commence. This argument I deem to be without merit.

15. It should also be noted that Medicaid beneficiaries can seek permission for a single group hearing in those cases in which the sole issue involved is one of state or federal law requiring automatic grant adjustments for classes of recipients. 45 C.F.R. § 205.10(a)(5)(iv) and (v).

U.S.C. § 1396a(a)(22) and the regulations thereunder, 45 C.F.R. § 246.10, and the New York State Social Services Law § 365–c (McKinney 1976) in that the Commissioner of the Department of Social Services failed to consult with a Medical Advisory Committee prior to the enactment of, and also prior to the implementation of, Section 16.

In order to receive federal funds under the Medicaid program, each state must establish standards and methods to assure the delivery of high quality medical care. 42 U.S.C. § 1396a(a)(22)(D). The federal regulations require each state to establish a Medical Advisory Committee ("M.A.C."), whose members must be selected from certain enumerated interest groups. 45 C.F.R. § 246.10. Once constituted, M.A.C. is to "have adequate opportunity for meaningful participation in policy development and program administration, including the furtherance of recipient participation in the program of the agency," and is to be provided such staff assistance "as [is] needed to enable it to make effective recommendations." 45 C.F.R. § 246.10(a)(3) and (a)(4). Consistent with these requirements, the New York State Legislature has established a M.A.C. to "advise the commissioner with respect to health and medical care services . . ." Social Services Law § 365–c.

There was no consultation with New York State's M.A.C. with respect to the proposal of Section 16, the adoption of Section 16, or the implementation of Section 16. Despite the requirements of 45 C.F.R. § 246.10, and of Section 365–c of the New York Social Services Law, there has been no functioning M.A.C. in New York State since 1974.[16] Thus the Commissioner did not consult with M.A.C. either before the enactment or before the implementation of Section 16. Had there been prior consulta-

tion with a functioning and broadly based M.A.C. *prior* to enactment of Section 16, alternatives to its co-payment provisions might have been proposed and adopted.[17]

Defendants maintain that, even if M.A.C. had been functioning, the Commissioner could not constructively have consulted with M.A.C. *after* enactment and prior to implementation of Section 16 because Section 16 as enacted left no discretion in the Commissioner to impose anything but the maximum co-payment permitted by federal law. Thus, they argue, any consultation with M.A.C. prior to implementation would have been fruitless. They contend that Section 16 mandated the Commissioner to impose upon Medicaid beneficiaries the maximum co-payments permitted by federal law.

Section 16 states in relevant part:

[P]ayment for claims . . . shall be reduced in accordance with department regulations by an amount not to exceed the maximum amount authorized by federal law and regulations . . .

Thus the language of Section 16 on its face appears to vest discretion in the Commissioner (who presumably promulgates departmental regulations) with respect to the amount of co-payments.

The Department of Social Services was actively involved not only in supporting Section 16, but in drafting the statute.[18] On this issue, as on all other issues, M.A.C. had no opportunity to make known its opinion.

Defendants argue that M.A.C.'s role is limited to major policy considerations. 45 C.F.R. § 246.10(a)(3) speaks of "participation in policy development and program administration." Proposal and enactment of a co-payment provision, where there was

---

**16.** The Medical Advisory Committee ("M.A.C."), as established by Social Services Law § 365–c, has not met since 1974 and is not now in existence. Of the 20 members required to serve on that committee, only six persons have been appointed. See affidavit of Ellice Fatoullah dated May 16, 1977.

At oral argument on June 13, 1977, counsel for the defendants stated that the rest of these

positions are currently in the process of being filled.

**17.** See affidavit of Martin Schiffer, dated May 19, 1977.

**18.** See affidavits of Shirley Harvey, dated June 1, 1977; Emily Young, dated June 2, 1977; Robert Schiffer, dated June 1, 1977; and Patrick Bulgaro, dated June 1, 1977.

none before, constitutes a major policy development, and participation by M.A.C. was required by the federal regulations, authority for which is found in the Social Security Act itself. 42 U.S.C. § 1396a(a)(14), 45 C.F.R. § 249.40(a)(3).

■ Moreover, Section 365–c of the Social Services Law refers to M.A.C.'s rendering advice with respect to health and medical care services provided pursuant to Title 11 of the Social Services Law. Since the co-payment provisions affect health and medical care services provided in Title 11, the failure of the Commissioner to consult with M.A.C. appears to have violated Section 365–c.

The co-payment provision is therefore clearly the type of provision with respect to which M.A.C. should have had input.[19]

The Commissioner's failure to consult with M.A.C. appears to have violated the federal regulations and the New York State statute. See Benton v. Rhodes, supra; Robinson v. Maher, supra; Diane Ho v. Andrew Chang, No. 76–0029 (D.Haw. April 27, 1977) (unreported decision); Dominguez v. Milliken, CCH Medicaid and Medicare Guide, ¶ 26,633 (W.D.Mich.1973). Accordingly, on this issue plaintiffs have established a probability of success warranting the grant of preliminary injunctive relief.

### 3. Discrimination in Favor of Certain Medicaid Recipients

Finally, plaintiffs challenge Section 16 as violative of the Equal Protection Clause, the Social Security Act, 42 U.S.C. § 1396a(a)(10)(B)(i) and (10)(C)(ii), and the federal regulations promulgated pursuant to the Social Security Act, 45 C.F.R. § 249.-10(a)(6) and (a)(7), in that it fails to impose co-payments uniformly on all medical assistance beneficiaries. Instead, plaintiffs contend Section 16 impermissibly exempts certain groups from the co-payment provisions. Plaintiffs point to the exclusion of all those who are under 21 years of age, those who are receiving medical services on an in-patient basis in a hospital, and those out-patients of institutional clinics where the cost of items covered by Section 16's co-payment requirement is included in the reimbursement rate for the institution.

Following the precepts of Hagans v. Lavine, supra, I deal with the statutory issues in order to avoid reaching the constitutional issues herein.

The thrust of the plaintiffs' objection to Section 16 is that it violates those provisions of the Social Security Act which are commonly referred to as the "comparability" provisions. The Social Security Act defines two federal groups of medical assistance beneficiaries, the "categorically needy" and the "medically needy."[20] Under the comparability provisions of the Act, each person in each of these groups shall be eligible for the same "amount, duration and scope" of coverage as all the others in his or her group, subject to certain limited exceptions.

---

**19.** Defendants argue that it would not have been feasible for the Commissioner to have conferred with M.A.C. since the Medicaid Assistance Manual (a publication of H.E.W.) suggests only that M.A.C. meet at a minimum of once every three months. This argument ignores the fact that pursuant to Social Services Law § 365–c special meetings of M.A.C. may be called by the Chairman at the request of the Governor or Commissioner. Moreover, the facts belie defendants' assertion since the regulation was issued on May 1, 1977, and the Department of Social Services was actively involved in the enactment of Section 16 as early as February 17, 1977, suggesting that there was more than sufficient time within which to consult M.A.C., if there had, indeed, been a functioning M.A.C. See affidavit of Shirley Harvey dated June 1, 1977.

**20.** The "categorically needy" are persons actually receiving cash assistance under the Aid to Families with Dependent Children or Supplemental Security Income programs, 45 C.F.R. § 248.1(a), plus certain optional persons including those eligible for but not receiving such benefits. 45 C.F.R. § 248.1(c). New York has elected to cover such optional "categorically needy". New York has also elected to cover the "medically needy". The "medically needy" are those who but for excess income or resources would be "categorically needy" and whose medical expenses bring them down to the cash assistance level. 42 U.S.C. § 1396a(10)(C)(i).

Specifically, under the Social Security Act, 42 U.S.C. § 1396a(a)(10)(B)(i), applicable to the "categorically needy", "the medical assistance made available to any individual" in that group "shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." As to the "medically needy", the statute provides: "the medical assistance made available to all individuals . . shall be equal in amount, duration and scope . . ." 42 U.S.C. § 1396a(a)(10)-(C)(ii). And finally, § 1396a(a)(10)(B)(ii) requires that the "categorically needy" receive no "less in amount, duration or scope" than the "medically needy". *White v. Beal,* 413 F.Supp. 1141 (E.D.Pa.1976). See also 45 C.F.R. § 249.10(a)(6) and (a)(7).

Plaintiffs contend that the exemptions from Section 16's co-payment provisions violate all three of these comparability provisions.

With respect to the "medically needy", federal law generally permits co-payments, with certain limited exceptions relating to age requirements.[21] 42 U.S.C. § 1396a(a)(14)(B). Plaintiffs contend that Section 16's exemptions—for those 21 and under, inpatients in hospitals, and out-patients of clinics where the reimbursement rate includes drugs, etc.—do not fall within any of these exceptions, and that therefore the comparability requirements are violated within the "medically needy" category. Assuming Section 16's exemptions to be invalid as to the "medically needy" category,

plaintiff's argument continues, they must also be invalid as to the "categorically needy" since the latter would be receiving less in amount, duration or scope of assistance by virtue of certain of the "medically needy" not being required to make co-payments.

Plaintiffs also contend that within the "categorically needy" group itself, Section 16 violates the comparability requirements of 42 U.S.C. § 1396a(a)(10). Unlike the "medically needy" for whom co-payments are generally permitted by federal laws, co-payments are prohibited for the "categorically needy" on certain enumerated services.[22] 42 U.S.C. § 1396a(a)(14). Plaintiffs contend that New York's statutory exemption is far broader than the prohibited categories listed, and that therefore the statute must fall on this ground as well.

Defendants contend that assuming the comparability requirements do apply to the co-payment provisions of Section 16,[23] the individuals exempted from the co-payment provisions of Section 16 are specifically exempted from the comparability requirements. First, defendants maintain that the exemption of those persons who are under 21 from co-payment is specifically authorized by the regulations. Defendants rely, for this contention, on the fact that co-payments are prohibited for the categorically needy on certain required services, one of which is the early and periodic screening, diagnosis and treatment program (hereinafter "EPSDT"). 45 C.F.R. § 249.10(a)(1)

---

**21.** Skilled nursing facility services can be limited to persons aged 21 or older, 42 U.S.C. § 1396d(a)(4)(B); early and periodic screening diagnosis and treatment can be limited to persons under 21, 42 U.S.C. § 1396d(a)(4)(B); family planning services and supplies can be limited to persons of childbearing age, 42 U.S.C. § 1396d(a)(4)(C); services in institutions for tuberculosis or mental institutions can be limited to persons aged 65 or over, 42 U.S.C. § 1396d(a)(14); and in-patient psychiatric hospital services can be limited to persons under 21, 42 U.S.C. § 1396d(a)(16).

**22.** The services on which co-payments are prohibited are, in summary form: 1) in-patient hospital services (except in tuberculosis or mental hospitals); 2) out-patient hospital services; 3) laboratory and X-ray services; 4)

skilled nursing facility services (other than in tuberculosis or mental institutions); 5) early and periodic screening, diagnosis and treatment; 6) family planning services and supplies; 7) physician's services; and 8) home health care services. 42 U.S.C. § 1396a(a)(14)(A)(i); § 1396d(a)(1–5) and (7).

**23.** Defendants argue at the outset, that since the comparability provisions are framed in terms of "amount, duration and scope" there need not be any comparability as to the *cost* of services. This syllogism continues that since Section 16 affects the cost of services, it is not governed by the comparability provisions of the Social Security Act. I reject this argument as being without basis in law or logic.

and (b)(5). Moreover, defendants point out that with respect to both the "categorically needy" and the "medically needy", federal regulations specifically exempt the EPSDT program from the comparability requirements. See 45 C.F.R. §§ 249.10(a)(6)(iv) and 249.10(b)(4)(iii). Under the defendants' analysis it would be illegal for the state to impose co-payments on those under 21.

Plaintiffs do not dispute the fact that EPSDT is exempt from the comparability provisions of the regulation but argue that Section 16's statutory exemption is far broader than that provided in the regulations. EPSDT is defined in 45 C.F.R. § 249.10(b)(4)(ii) of the regulations as follows:

> Early and periodic screening and diagnosis of individuals under the age of 21 who are eligible under the plan to ascertain their physical or mental defects, and health care, treatment and other measures to correct or ameliorate defects and chronic conditions discovered thereby.

In New York State and City this service is known as the Child Health Assurance Program ("CHAP"). The plaintiffs maintain that the state's argument erroneously assumes that all children under 21 are enrolled in CHAP and that all services they receive are CHAP services. This argument, they assert, is not only incorrect in law but unsupported in fact. CHAP, or EPSDT, according to the plaintiffs, is a program designed to encourage early and periodic screening of children and to correct defects and conditions discovered thereby. Plaintiffs distinguish this type of treatment from episodic care such as a cold or strep throat which is not, they argue, under CHAP. Moreover, plaintiffs point out that although all Medicaid beneficiaries under 21 are eligible for CHAP, most children under 21 are not CHAP-enrolled in this state. See *Woodruff v. Lavine,* 417 F.Supp. 824 (S.D. N.Y.1976).[24]

Both sides have submitted affidavits supporting their respective interpretations of the services provided under EPSDT. Although it appears from a reading of the definition of EPSDT that it is designed to cover only those defects and conditions discovered in the course of diagnosis and treatment, defendants point out that the Department of Social Services has determined that CHAP treatment is not limited to this type of treatment. See affidavits of Dr. Steibel, dated June 2 and June 8, 1977. Further, defendants argue that even if the plaintiffs' interpretation is correct, the difficulties inherent in distinguishing between treatment to children under 21 who are receiving CHAP treatment and those who are not would create an administrative morass not envisioned by the drafters of the federal regulations.

Regardless of the ultimate resolution of this issue, it is clear that at a minimum plaintiffs have shown sufficiently serious questions going to the merits on this issue to make them a fair ground for litigation. In view of my finding that there is a substantial question as to whether Section 16 violates the comparability provisions by excluding all those under 21 from its co-payment provisions, I find it unnecessary to reach the issue at this time of the other exemptions under Section 16.

### D. *Preliminary Injunction*

The now familiar test in this Circuit for the granting of preliminary injunctive relief is whether there has been " 'a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original)" *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976).

---

24. H.E.W. has also taken the position that not all children under 21 participating in the Medicaid program are covered by EPSDT or CHAP.

I have already found that there has been a clear showing by the plaintiffs of probable success on the merits with respect to notice and failure to consult the Medical Advisory Committee. With respect to discrimination in favor of certain Medicaid recipients there are sufficiently serious questions going to the merits to make them a fair ground for litigation.

■ Plaintiffs must also establish the element of the threat of irreparable harm as a prerequisite to relief. *Triebwasser & Katz v. American Tel. & Tel. Co., supra* at 1359. In support of their position that they will be irreparably harmed by the enforcement of Section 16, plaintiffs have submitted numerous affidavits indicating that the co-payment requirement can and will have drastic effects on the plaintiffs and others similarly situated, and in particular on geriatric beneficiaries of Medicaid. In some instances, beneficiaries will be forced to live below a subsistence level and give up other daily necessities in order to obtain life-sustaining drugs.[25] In other instances, beneficiaries, who are totally without funds, will be unable to purchase drugs which are medical necessaries.[26]

Defendants argue that although these co-payments may cause financial hardship for Medicaid recipients, they will not constitute irreparable harm. Further, the defendants argue that the State's budgetary problems will be aggravated by its inability to collect these co-payments and that the balance of equities tips in its favor.

■ Although I am sympathetic to the State's financial difficulties, I find that the balance of equities clearly weighs in favor of the plaintiffs. The implementation and enforcement of Section 16 will irreparably damage certain of the Medicaid beneficiaries who are required to make co-payments and who are without funds to do so—notably those in nursing homes who have no funds to make co-payments.[27] "The injury to those whose health is maintained on the slenderest chemical balance provided through medication is not merely irreparable; it is ultimate." *Bass v. Richardson,* 338 F.Supp. 478, 489 (S.D.N.Y.1971); *See also Bass v. Rockefeller,* 331 F.Supp. 945, 947 n. 3 (S.D.N.Y.) *vacated on other grounds,* 464 F.2d 1300 (2d Cir. 1971) (*per curiam* ).

Plaintiffs have made a clear showing that they are entitled to preliminary relief on all three grounds upon which they have challenged Section 16. Accordingly, defendants will be preliminarily enjoined from implementing and enforcing Section 16.

The foregoing constitutes findings of fact and conclusions of law required by Rule 52.

An order implementing the above is being filed concurrently herein.

### E. *Further Proceedings*

A hearing will be held herein on June 30, 1977 at 10 a. m. in Courtroom 318, United States Courthouse, Foley Square, New York, to consider the parameters of the class to be certified herein, and to delineate the issues to be tried. The trial is scheduled for July 7, 1977 at 10 a. m.

---

**25.** See affidavits of plaintiff Itha David Becker, dated May 18, 1977 and Hannah M. Kneafsey dated May 18, 1977.

**26.** See affidavits of Richard Roberts dated June 2, 1977; Salvatore J. Rubino, dated June 2, 1977; Robert Sherman, undated; Norman Goodman, dated June 3, 1977; Roy Watkis dated June 2, 1977. See also affidavits of Jack Bernstein dated June 2, 1977; Bertha Bernstein dated June 2, 1977; Bernard Witt dated May 25, 1977; Jesse Jones dated May 25, 1977; Ida

Simons, undated; Myriam Rubin dated May 25, 1977.

**27.** Defendants' "assurances" that the State will provide "necessary" drugs to adult home residents is too nebulous at this time for this Court to rely on it and risk the lives of numerous beneficiaries. Moreover, it still leaves many beneficiaries unprotected from the possibility of irreparable damage.