Mary DOE, by her Power of Attorney Jane DOE; Lucy G.; and Clara S., by her Power of Attorney Richard S., on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

Cesar PERALES, individually and in his capacity as Commissioner of the New York State Department of Social Services; W. Burton Richardson, as Director of the Monroe County Department of Social Services; and Rita B. Otterbein, as Director of the Wayne County Department of Social Services, Defendants.

Civ. No. 91–6072.

United States District Court,
W.D. New York.

March 1, 1991.

Order Approving Settlement
Aug. 15, 1991.

Joseph M. Connors, Bryan D. Hetherington, Monroe County Legal Assistance Corp., Ellen Yacknin, Greater Upstate Law Project, Rochester, N.Y., for plaintiffs.

Elizabeth J. McDonald, Office of New York State, Atty. Gen., Dept. of Law, James A. Robinson, Rochester, N.Y., Gary Lee Bennett, Wayne County Dept. of Social Services, Lyons, N.Y., for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### FACTS

Plaintiffs, all residents of local nursing homes, as representatives of a class, have

commenced this action to enjoin the defendants from implementing changes in the New York State Medicaid program that have the effect of reducing the amount of exempt resources available to certain Medicaid recipients. Pending before me is plaintiffs' application for an order restraining defendants from taking any immediate steps to implement the changes pending the court's decision on plaintiffs' motion for a preliminary injunction.

Unlike most applications for temporary restraining orders under Federal Rule of Civil Procedure 65, the proceedings to date in this case have been on full notice to all parties. On February 26, 1991, the Court met at length with counsel in chambers, heard brief statements from all parties and set down a briefing schedule for argument on the preliminary injunction, which is scheduled for March 13, 1991. In addition, the Court has received written submissions from plaintiffs and defendant Perales, and has heard further oral argument from all parties in open court on March 1, 1991.

Plaintiffs urge that they will suffer irreparable harm from defendants' actions before the Court hears argument on the preliminary injunction. Thus, they have asked the Court to issue temporary relief, enjoining the state from implementing its decision until that time.

## FACTS

The three named plaintiffs are all elderly residents of nursing homes in Rochester who are dependent on Medicaid for their care. The plaintiffs allege that in January, 1991 the New York State Department of Social Services ("NYSDSS") determined that Chapter 938, § 38 of the laws of 1990, enacted by the New York legislature on December 21, 1990, required a reduction of permissible exempt resource levels allowed to Medicaid recipients. Whereas, previously, individual recipients could maintain exempt resources of $3,350 in a given month, the new limit became $3,000.

Plaintiffs further contend that on January 28, 1991, NYSDSS first notified nursing home care providers of this change in a form letter. The letter briefly announced the change in the resource limit and directed the provider to distribute an enclosed form "notice" to residents of the facility to whom the new changes applied. The letter delegates to the provider the function of determining which residents should receive the notice on the basis of the provider's calculation of the residents' change in net available monthly income (NAMI) from January to February 1991.

Finally, both the form letter and enclosed notice for distribution to residents state that the reduction in resource limit was effective as of February 1, 1991. The notice for distribution informs the recipient that "excess resources," i.e., those exceeding the $3,000 limit would be applied toward the cost of the recipient's medical care.

## DISCUSSION

A party is entitled to preliminary injunctive relief if it can show irreparable harm and a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in its favor. See *Plaza Health v. Perales*, 878 F.2d 577 (2d Cir. 1989); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir.1979).

Plaintiffs challenge defendants' actions on essentially four grounds. First, plaintiffs maintain that defendants have reduced Medicaid benefits without giving recipients prior notice and the opportunity for a fair hearing as mandated by federal regulations and federal caselaw. Second, it is alleged that defendants failed to give public notice, also required by federal regulation, of the proposed changes in the method for determining benefits. Third, plaintiffs assert that defendants have violated the Medicaid statute itself by failing to base the determination of plaintiffs' eligibility for benefits on the resources actually available to the recipient. Finally, plaintiffs allege that defendants have improperly delegated to the nursing facilities the responsibility for the administration and supervision of the Medicaid program.

## A. *Notice*

■ Because the regulations relied upon by the plaintiffs mandate the giving of notice to Medicaid recipients before benefits are suspended or reduced, it is necessary in the first instance to determine whether defendants' actions constitute a reduction in benefits. For purposes of this application, it seems clear that the state's proposed action constitutes a sufficient "reduction" of benefits to implicate the applicable federal regulations. To put it simply, Medicaid recipients whose resources in February exceeded the new limit must pay up to $350 more for that month's care than they would have had to pay under the previous limit. To give an example, a recipient owning $3500 in available resources in February would have paid $150 to the provider under the old limit, but now owes $500 to the facility under the new one.

The care provided costs more to the recipients under the new plan. The recipients' resources must be used to pay for care that was previously covered by Medicaid. The creation of a new resource limit has a direct and immediate impact on many recipients, forcing them to spend more of their meager assets on medical care and, therefore, in effect reducing the amount of care covered by Medicaid.

Assuming then that the state's action has caused a reduction in benefits, the question becomes whether plaintiffs are likely to succeed on their claims that defendants have violated federal law or federal regulations.

Plaintiffs cite three separate regulations in support of their claims that defendants have failed to give proper notice of their actions. These include:

—42 C.F.R. § 435.919, which requires that an agency give a recipient "timely and adequate notice" of proposed discontinuance, suspension or reduction in benefits;

—42 C.F.R. § 431.211, which specifically requires that an agency mail a notice at least 10 days before the date of action; and

—42 C.F.R. § 447.205, which requires that an agency publish *public* notice prior to the effective date of any significant proposed change in statewide methods and standards for setting payment rates for services.

Addressing first the latter regulation, there is no evidence on this record that defendants published public notice of the proposed resource limit changes that are to be applied statewide. The newly enacted law does not directly require the $350 reduction in the exempt resource limit. Rather, the defendants in this case have interpreted the legislation to require that reduction. At this juncture anyway, plaintiffs challenge defendants' construction of the statute rather than the statute itself, and I find that § 447.205 appears to require publication of defendants' intent to alter its methods of computing payment rates on the basis of the new legislation. *See Claus v. Smith*, 519 F.Supp. 829 (N.D.Ind.1981); *Morabito v. Blum*, 528 F.Supp. 252 (S.D.N.Y.1981).

Plaintiffs have also established a likelihood of success on their claim that the failure to provide proper notice of the change to each recipient violated federal law. There is simply no question on the record before me that the individual notice of defendants' action given to nursing home residents receiving Medicaid was not timely. Notices were mailed January 28 and the reduction in benefits took effect February 1. The state's failure to comply with the applicable regulation deprives recipients of the meaningful opportunity for a hearing prior to a reduction in benefits that is required as a matter of due process. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Plaintiffs too are likely to succeed on their claim that the notices were not adequate under § 435.919, which incorporates by reference § 431.210. Section 431.210 requires notice of agency action to include several specific pieces of information, including a statement of the proposed action, the reasons for the intended action, and the specific change in law or regulation requiring the change. From a review of the notices intended for distribution to nursing facility residents, the court finds them to be deficient in many respects.

I therefore find that plaintiffs are likely to succeed on their claim that defendants have violated federal regulations by failing to provide nursing home residents receiving Medicaid with timely and adequate notice of the change in the applicable resource limit.[1]

It is too well established to require citation that the states *must* comply with all applicable federal regulations in administering the Medicaid program. There is certainly ample authority that a court may enjoin a threatened reduction in benefits of which there has not been timely notice. *See e.g., Morabito,* 528 F.Supp. at 272–76 (failure to conform with public notice requirement); *Becker v. Toia,* 439 F.Supp. 324 (S.D.N.Y.1977).

### B. Evaluation of Resources

Plaintiffs complain that, by calculating recipients' resources for purposes of determining whether those resources exceed the new $3000 limit on the basis of stale financial data, defendants have violated specific provisions of the Medicaid statute. The statute, at 42 U.S.C. § 1396a(a)(17)(B), requires state Medicaid agencies in determining benefits to "tak[e] into account only such income and resources as are … available to the applicant or recipient." Section 1396a(a)(17)(C) compels the state Medicaid agency to "provide for [the] reasonable evaluation of the [recipient's] income or resources."

Plaintiffs contend that, to determine whether a given recipient's resources in February exceeded the $3,000 limit, defendants turned to a January NAMI roster, itself completed on December 23, 1990. Plaintiffs have submitted affidavits that NAMI information is obtained from financial data collected during the course of a recipient's annual recertification. This process could have been completed many months previously; i.e., it is as current as the recipient's last recertification. Plaintiffs claim, and I agree, that they are therefore likely to succeed on their claim that

defendants have failed to determine their eligibility for benefits on the basis of resources actually available.

Although it is perhaps unreasonable to expect state agencies to keep up-to-the-minute records on recipients' financial resources, the spirit of the statute clearly would be violated if the states evaluated eligibility on the basis of information that is over a year old. The legislative history of the Medicaid Act specifically states that the cited provisions "are designed so that the states will not assume the availability of income which may not, in fact, be available." S.Rep. 404, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2018.

A more thorough analysis of whether the state has met its burden as defined by the Act will have to await further factual development. For purposes of this application, I find that plaintiffs have shown a likelihood of success.

### C. Irreparable Harm/Balance of Hardships

■ Whether the plaintiffs in this case will suffer irreparable harm if the defendants are allowed to go forward with the implementation of the changes in the state plan is a matter of some dispute between the parties. Plaintiffs take the position that *any* reduction in a nursing home resident's Medicaid benefits constitutes irreparable harm, regardless of the prospects for reimbursement.

The Commissioner has advised the Court that he will waive any potential defense of sovereign immunity under the Eleventh Amendment in connection with claims for reimbursement of payments should the Court determine that the process for exacting the payments violated federal law. Defendants assert therefore that the availability of reimbursement renders any potential harm compensable by a money judgment. Defendants also point out that nursing

---

**1.** Because the state has voluntarily agreed not to disseminate an administrative directive (ADM), which would require local agencies to apply the new resource limits to Medicaid recipients living in the community, pending the court's ruling on the preliminary injunction motion, I need not address issues concerning these recipients at this time.

home residents receiving Medicaid will suffer no interruption in care or services as a result of the state action.

Although the court appreciates that no *medical services* will be denied plaintiffs as a result of the change in resource limit, as noted above, *benefits* will certainly be denied. The individual resident may be forced to pay up to $350 more for her care than she would have otherwise.

Other courts have recognized that Medicaid recipients, who in many cases by definition live at the subsistence level, suffer irreparable harm if those benefits are wrongly reduced. *See, e.g., Ellender v. Schweiker,* 550 F.Supp. 1348, 1357–58 (S.D.N.Y.1982); *Becker,* 439 F.Supp. 324, 336. The court in *Ellender* held this to be so even where the prospect for reimbursement exists. In *Becker,* the court found that requiring a Medicaid recipient to make co-payments for her care caused irreparable harm to the extent that it forced that person to forgo other daily necessities in order to obtain needed assistance.

Nor need the reduction be drastic to constitute irreparable harm. Courts in the past have recognized that even a modest reduction in a recipient's Medicaid benefits, given the recipient's dire situation, can drastically affect the individual's well being. *See Becker* (state enjoined from requiring Medicaid recipients to furnish 50–cent medication copayment; state failed to comply with applicable notice provisions); *Bass v. Richardson,* 338 F.Supp. 478, 489 (S.D.N.Y.1971) ("Fifty dollars monthly can mean the difference between relative comfort and a life of utility for one who faces an otherwise grim and painful future").

Defendants attempt to distinguish cases cited by the plaintiffs on the ground that in those situations, citizens were deprived of direct cash assistance and so in some cases found themselves unable to meet basic personal needs. Defendants insist that no nursing home resident will suffer in this way, inasmuch as each maintains a sufficient cash reserve.

At this juncture, with the facts as undeveloped as they are, I am not willing to indulge in this assumption. The potential exists, based on the record before me, that some individuals, whose resources have been inaccurately determined, will be asked to pay amounts that they no longer can afford to pay. Admittedly, many of the cases in which courts have found irreparable harm as a result of a reduction in benefits involved plaintiffs for whom the reduction would mean the likely loss of food, care or shelter. *See, e.g., Viverito v. Smith,* 421 F.Supp. 1305 (S.D.N.Y.1976). Nevertheless, given what appears, in my view, to be the substantial possibility that the erroneous calculation of some plaintiffs' resource levels might cause care providers to exact payment from nursing home residents truly living on the "brutal edge of poverty," *id.* at 1311, the possible harm that may result if the defendants are not now enjoined cannot adequately be redressed with monetary awards that may be weeks or months in coming.

The hardships clearly balance in plaintiffs' favor. For one thing, it is by no means clear that temporary relief of the type sought will cost defendants substantially more than would a later order requiring that they undo their actions, in the event the court finds against them. Rather, an order enjoining the state from taking further action at this juncture merely causes the state to delay by a short time its efforts to collect its funds.

The harm to this special group of elderly citizens who are confined to nursing homes is very real. Deprivation of even modest sums of money can cause significant harm—financial as well as emotional.

## D. Conditional Class Certification

Plaintiffs originally moved to have the court certify this as a class action, with the class to consist of all New York past, future or present applicants or recipients of Medicaid. Because defendants have consented not to take action to reduce the benefits of community Medicaid recipients until the court issues its decision on the motion for preliminary injunction, I see no need to certify the class that broadly at this point.

■ To ensure, however, that the defendants will apply the injunctive relief I order today on a class-wide basis, I hereby conditionally certify a plaintiff class to include all New York nursing home residents who received Medicaid benefits during the month of February and who will receive such benefits in the future. I find that the facts of this case as they have been thus far developed warrant conditional class certification under Federal Rule of Civil Procedure 23(b)(2).

### E. Relief

For the reasons set forth above, I hereby enjoin the defendants immediately from taking any steps to apply changes in New York's Medicaid resource limits to any member of plaintiffs' class as herein defined, pending the Court's decision on plaintiff's motion for a preliminary injunction or further Court order.

Defendants are further ordered to notify immediately all nursing facility providers, that received NYSDSS' January 28, 1991 letter and/or any and all subsequent notices regarding NYSDSS' change in the Medicaid resource limits, to cease immediately any and all actions to bill for or collect monetary contributions from members of the class, which contributions are directly attributable to NYSDSS' change in the Medicaid resource limits.

Defendants have not requested that plaintiffs post a security bond pursuant to Fed.R.Civ.P. 65(c). While Rule 65(c) appears mandatory, a court in its discretion may decline to require the posting of security. *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir.1976) (court may dispense with the filing of a bond where no request for one is made); *LaPlaza Defense League v. Kemp*, 742 F.Supp. 792, 807 n. 13 (S.D.N.Y.1990).

In any event, this class action is comprised of indigent persons proceeding *in forma pauperis*. Since plaintiffs apparently do not have sufficient resources to post a security bond, they would be precluded from maintaining this action if such a bond were required. *See LaPlaza Defense League*, 742 F.Supp. at 807 n. 13; *see*

*also Bass v. Richardson*, 338 F.Supp. 478, 489–90 (S.D.N.Y.1971) ("indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c).") Under these conditions, the Court declines to order the posting of security.

IT IS SO ORDERED.

### ORDER APPROVING SETTLEMENT

Plaintiffs brought this suit as a class action alleging that defendants implemented changes in state law, which had the effect of reducing plaintiffs' Medicaid benefits, without complying with various notice provisions of federal law. The parties have reached an agreement settling the case and have signed a Stipulation and Order reflecting that agreement which the Court has endorsed. This Stipulation and Order was filed on August 14, 1991.

Pursuant to Federal Rule of Civil Procedure 23(e), the Court, having reviewed the Stipulation and having heard the arguments of counsel, and being familiar with the facts and issues of this case, has determined that it is fair, reasonable and adequate and hereby approves the settlement.

Normally under Rule 23(e) the court, before approving a settlement of a class action, is required to give notice of the terms of the agreement to members of the class and provide them with an opportunity to object at a public settlement hearing. *See, e.g., Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1219 (5th Cir.1978). This requirement of Rule 23(e) exists primarily to discourage individual plaintiffs from using the class action device to secure unjust settlements to the detriment of the interests of the rest of the class. *See 2 Newberg on Class Actions*, § 8.18 at 132.

■ There are, however, circumstances in which notice is unnecessary. In my view, this is one of those circumstances. The terms of the settlement provide near complete relief to the plaintiff class as measured against the complaint. Moreover, there is no monetary recovery at issue here; hence there is virtually no potential for the named plaintiffs to benefit from the

settlement at the expense of the interests of the rest of the class. The only relief sought in this case, and the relief that is gained by virtue of the settlement is a requirement that the state defendants comply with state and federal law. Finally, there is no evidence whatsoever of any collusion between the plaintiffs named to represent the class and the defendants.

Rather than advance the goals of the notice provision of Rule 23(e), requiring notice and a hearing in this case would entail substantial delay and concomitant cost, all to the detriment of the class itself.

This case typifies those in which settlement has been approved without class notice. *See Larkin General Hospital, Ltd. v. AT & T,* 93 F.R.D. 497 (E.D.Pa.1982); *Plaskow v. Peabody Int'l Corp.,* 95 F.R.D. 297 (S.D.N.Y.1982); *Sheinberg v. Fluor Corp.,* 91 F.R.D. 74 (S.D.N.Y.1981); *see also Shelton v. Pargo, Inc.,* 582 F.2d 1298 (4th Cir.1978) (discussing circumstances under which precertification settlement may be approved without notice).

### CONCLUSION

For all the reasons detailed above, I decline to order notice and a hearing prior to approving the settlement. The settlement between the parties is hereby approved.

IT IS SO ORDERED.