Craig HIMES, et al., Plaintiffs,

v.

Louis W. SULLIVAN, M.D., et al., Defendants.

Civ. No. 91-6172L.

United States District Court, W.D. New York.

Nov. 13, 1992.

Ellen M. Yacknin, Greater Upstate Law Project, Rochester, N.Y., David B. Pels, Southern Tier Legal Services, Bath, N.Y., for plaintiffs.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, N.Y., for Louis W. Sullivan, M.D.

Charles D. Steinman, Office of N.Y. State Atty. Gen., Dept. of Law, Rochester, N.Y., for Mary Jo Banes.

James A. Robinson, Rochester, N.Y., for W. Burton Richardson.

Thomas S. Pera, Buffalo, N.Y., for Karen Schimke.

Gary Lee Bennett, Wayne County Dept. of Social Services, Lyons, N.Y., for Rita B. Otterbein.

H. Bartlett McGee, Jr., Warren County Dept. of Social Services, Lake George, N.Y., for Joseph P. Menaldino.

Martha A. Rogers, Arlene Zwilling, County of Suffolk Dept. of Law, Hauppauge, N.Y., for Ruth A. Brandwein, Ph.D.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiffs, on behalf of themselves and all similarly situated Medicaid applicants and recipients throughout New York State,

brought this action to enjoin defendants from considering court ordered support payments, income taxes, and Social Security and state disability insurance contributions, when determining their eligibility for Medicaid benefits under 42 U.S.C. § 1396a(a)(17)(B).

Pending before the Court are the parties' cross-motions for summary judgment.[1]

## BACKGROUND

The factual background of this action is more fully set forth in my prior decision denying plaintiffs' motion for a preliminary injunction, *Himes v. Sullivan*, 779 F.Supp 258 (W.D.N.Y.1991), *aff'd*, 956 F.2d 1159 (2d Cir.1992) (*"Himes I"*), familiarity with which is assumed. In that decision, I considered all of the issues now raised by plaintiffs and determined that a preliminary injunction was not warranted, principally because plaintiffs could not demonstrate a likelihood of success on the merits. The Second Circuit affirmed my denial of a preliminary injunction in a lengthy, seventeen-page decision, entered as a summary order.

After the Second Circuit's decision, the parties have engaged in discovery and they have now cross-moved for summary judgment. In their motion for summary judgment, plaintiffs essentially rely on the same arguments that they did previously in their motion for a preliminary injunction. Similarly, defendants, for the most part, rely on the same arguments that they set forth in opposition to the motion for a preliminary injunction.

Although plaintiffs make the same arguments that they did in seeking preliminary relief, they contend that the result should be different now because of certain facts obtained during discovery which plaintiffs claim warrant judgment in their favor as well as additional case authority on certain points which plaintiffs believe supports their cause.

I have carefully considered all of the matters submitted on the motions for summary judgment and I conclude that defendants are now entitled to summary judgment and plaintiffs' complaint must be dismissed.

## DISCUSSION

The facts surrounding the initiation of this lawsuit and the statutory and legislative history of the relevant statutes were set forth and discussed at length in my decision denying a preliminary injunction. *See Himes I.* Because familiarity with that decision is assumed, it will serve no purpose to repeat that which is contained there. To the extent that different factual or legal matters are relevant, those items will be discussed below in connection with the applicable legal discussion.

Plaintiffs' claims, which are essentially the same claims made on the application for a preliminary injunction, are as follows:

First, plaintiffs claim that the defendants are in violation of the clear requirements of the federal Medicaid statute, 42 U.S.C. § 1396a(a)(17)(B), by counting court-ordered support payments and mandatory payroll deductions when calculating "available income" in determining Medicaid eligibility for medical assistance. Plaintiffs contend that the Secretary of the Department of Health and Human Services' ("Secretary") interpretation of what constitutes "available income" and the New York State statute effective January 1, 1991, which comports with that interpretation violate federal law.

Plaintiffs argue that the Secretary's interpretation of the statute should be given no deference because it is a recent interpretation which, according to plaintiffs, conflicts with the Secretary's earlier interpretation of what constitutes "available income." Plaintiffs want the Court to rule as a matter of law that defendants' interpretation of the Medicaid statute is in error and that neither court-ordered support payments nor payroll deductions should be

---

**1.** Defendants Bane, Richardson, Schimke, Otterbein, Menaldino and Brandewein moved for judgment on the pleadings. Because I have considered materials outside the pleadings, I have treated their motion as a motion for summary judgment, pursuant to Fed.R.Civ.P. 56.

counted as available income in determining Medicaid eligibility.

Second, plaintiffs contend that defendant, New York State Department of Social Services ("NYDSS"), failed to give proper and timely public notice before implementing the changes mandated by the New York State Legislature's amendment of New York Social Services Law § 366(2)(a)(5) and 366(2)(a)(7), eliminating court-ordered support payments and payroll deductions as exemptions from determining income.

Third, plaintiffs claim that defendants also violated both state law and federal regulations by failing to consult with a properly constituted Medical Care Advisory Committee ("MCAC") prior to implementation of the above changes in New York law.

## I. Secretary's Interpretation Concerning Available Income

I discussed this argument at length in *Himes I* in my decision denying preliminary relief. I now incorporate by reference and adopt here my analysis of this issue in *Himes I*. I see no reason to duplicate my writing on this point because I believe I covered it sufficiently in *Himes I*. Plaintiffs have not suggested anything which would change my earlier analysis.

In fact, since my decision in *Himes I*, two circuits have addressed the issue of whether the Secretary's inclusion of child support payments in the definition of "available income" under 42 U.S.C. § 1396a(a)(17)(B), is a permissible construction of the statute. In *Peura v. Mala*, 977 F.2d 484 (9th Cir. 1992), the Ninth Circuit held that the legislative history of § 1396a(a)(17)(B) did not foreclose the Secretary's interpretation and that deference was owed to the Secretary's interpretation. *Peura*, 977 F.2d at 491. In *Emerson v. Steffen*, 959 F.2d 119 (8th Cir. 1992), the Eighth Circuit held that the statute did not rule out an interpretation of "available income" which included court ordered support payments and that the Secretary's interpretation was a permissible construction of the statute. *Emerson*, 959 F.2d at 121–22.

Based on the analysis in *Himes I*, and my analysis on this point in that decision and recent caselaw on point, I find that the Medicaid statute itself does not on its face prohibit the Secretary's actions and I find the Secretary's interpretation of what constitutes available income to be a permissible, not unreasonable construction of the Medicaid statute.

In urging me to reconsider my prior decision on this point, plaintiffs suggest that a recent Second Circuit case decided after my decision in *Himes I* changed the law concerning the deference that should be given to an agency's interpretation of a statute. Plaintiffs rely on *New York City Health and Hosps. Corp. v. Perales*, 954 F.2d 854 (2d Cir.1992). This case, however, does not mandate a different result here.

In *New York City Health*, the Second Circuit chose to give less deference to a NYSDSS regulation which limited New York's contribution to qualified Medicare beneficiaries. Contrary to plaintiffs' position, *New York City Health* did not change the standard for reviewing an agency's construction of a statute.

In *New York City Health*, the Second Circuit held first, that the regulation was at odds with the clear intent of the statute, and second, that NYSDSS's inconsistency with respect to the particular question at issue, entitled its current position to less deference.

Through discovery, plaintiffs have been able to find three references in a Supplement to the Department of Health, Education, and Welfare's "Handbook of Public Assistance Administration" ("Handbook"), which defines available income as resources which are "in hand." In addition, it is undisputed that New York State's Medicaid plans have contained the exclusions at issue and have been approved by the Secretary from 1966 until 1990.

Plaintiffs contend that this is evidence of the fact that the Secretary has changed his position on the definition of available income under 42 U.S.C. § 1936a(a)(17)(B). In light of this change, plaintiffs urge this Court, to give less deference to the Secre-

tary's current position and to mandate a definition of "available income" which excludes court ordered support payments and mandatory payroll deductions.

Defendants response is that the Secretary has always been consistent in policy, that the Handbook provisions never changed that policy, and that the approval of New York State's Medicaid plans, with its exclusions, were a mistake in implementation.

■ The Supreme Court has rejected the argument "that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question." *Rust v. Sullivan,* — U.S. —, —, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991), citing, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 862, 104 S.Ct. 2778, 2791, 81 L.Ed.2d 694 (1984). Whether or not the Secretary has been consistent in his interpretation of income, it is still entitled to deference.

An inconsistent position *alone,* is not enough to require this Court to give less deference to the Secretary's definition of available income. *Lewis v. Grinker,* 965 F.2d 1206, 1220 (2d Cir.1992) (decided after *New York City Health,* supra).

The Secretary's position with respect to the inclusion of court ordered support payments and mandatory payroll deductions in income is a permissible construction of the statute. While it may be inconsistent with the Secretary's actions in approving New York State's Medicaid plans and several provisions in the Handbook, on this basis alone, it is entitled to no less deference.

Plaintiffs are not entitled to summary judgment on the grounds that the Secretary's definition of available income is inconsistent with his prior long standing position and should be given less deference.

## II. *Adequate and Timely Notice*

■ I held in *Himes I,* that even if 42 C.F.R. § 447.205 covers the changes that are at issue here, no public notice need be given when the agency's action does not involve discretion or interpretation of a state statute. The so-called legislative exemption controls. All the state agency did here was to implement a clear state statutory mandate eliminating certain prior income exemptions. Under these circumstances, no "notice" is required. The public's "notice" or awareness of the proposed changes was accomplished in the political process accompanied by the bill's passage through the state legislature. For these reasons alone, I adopt my discussion in *Himes I* on this issue and rule that defendants did not violate the requirements concerning public notice.

Furthermore, I agree with defendants that 42 C.F.R. § 447.205 does not apply to the changes at issue here. Section 447.-205(a) states:

> **When notice is required.** Except as specified in paragraph (b) of this section, the agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates for services.

42 C.F.R. § 447.205(a) applies only to significant changes in "methods and standards for setting payment rates" and for reimbursing Medicaid providers. It does not apply to changes in eligibility requirements for Medicaid recipients.

Plaintiffs rely on *Morabito v. Blum,* 528 F.Supp. 252 (S.D.N.Y.1981), for the proposition that § 447.205 does apply to changes in Medicaid eligibility requirements. In *Morabito,* plaintiffs challenged the termination of an agreement ("the agreement") between New York State and the Secretary of the Department of Health and Human Services ("HHS"). In addition, plaintiffs contested the legality of certain amendments to New York State's Medicaid plan ("amendments").

The agreement provided that the parties agreed to accept HHS's determination of Supplemental Security Income ("SSI") eligibility as determinative of Medicaid eligibility. As a result, SSI recipients received Medicaid without having to formally apply and without having periodic redeterminations of Medicaid eligibility.

In *Morabito,* plaintiffs maintained, among other things, that the termination of

the agreement was unlawful because defendants failed to meet the prior public notice requirements of § 447.205. Defendants maintained that § 447.205 did not apply because it dealt with reimbursements for services and not changes in eligibility requirements.

The *Morabito* court reasoned that the notice requirement of § 447.205 was triggered by changes in a state's Medicaid plan which affected the cost of that state's participation. Since costs were affected by reducing the number of persons eligible for Medicaid, the *Morabito* court concluded that changes in eligibility requirements were within the scope of § 447.205.

This decision does not control, however, because I am not persuaded by its reasoning and because of amendments to the applicable regulations.

Since the *Morabito* court's decision on the applicability of § 447.205 to changes in Medicaid eligibility, HCFA has amended the regulation. In January 1984, interim regulations, which were published in September 1981, were codified. Among the changes to § 447.205 were the elimination of a mandatory 60–day waiting period for changes in payment methods and the elimination of a 1% expenditure threshold. Hence, prior to September 1981, a State agency was required to wait 60 days before implementing a change in payment methods which would increase or decrease Medicaid payments for that service by one percent or more. 42 C.F.R. § 447.205 (1980).

Presently, there is no mandatory waiting period or expenditure threshold. The purpose of the regulation, however, has not been altered. There is nothing in the language of the regulation, the comments received while changes were being considered, or HCFA's explanation of the changes and purpose of the new regulation, which suggests that it was ever meant to address the issue of Medicaid eligibility. *See* 46 Fed.Reg. 58,677 (Dec. 3, 1981); 48 Fed.Reg. 56,046 (Dec. 9, 1983). On the contrary, the regulatory history suggests that § 447.205 was meant only to address the setting of payment rates to providers.

For example, when eliminating the 60–day waiting period, HCFA summarized the regulation as requiring Medicaid state agencies to give public notice "of certain proposed changes in the Statewide method or level of reimbursement for Medicaid services." 46 Fed.Reg. at 58,677. When codifying the current regulation, HCFA stated that its purpose was to increase states' flexibility in setting payment rates for services, 48 Fed.Reg. at 56,046, and in developing more cost effective payment methods. 48 Fed.Reg. at 56,048.

Similarly, when eliminating the expenditure threshold, HCFA stated that it was doing so because the threshold was depriving "affected providers of an opportunity for public comment." 48 Fed.Reg. at 56,050. Prior to September 1981, a state could make major changes in its methods and standards which affected a significant portion of providers but which did not result in a 1% change in total program costs. The current regulation eliminated the expenditure threshold so providers would be allowed the opportunity for public comment irrespective of changes in total program costs.

However, § 447.205, as it reads today, without the 1% expenditure threshold, no longer addresses total program costs. It addresses costs for specific services and the methods used for determining the amount contributed to those costs by the state Medicaid agencies. *See* 48 Fed.Reg. 56,046.

Changes in the number of people receiving a particular service will affect the total amount a provider receives, but will not affect the amount a provider receives per service. This will only be affected by changes in the payment methods used by the Medicaid agencies for determining how much it will pay per service, and this is what § 447.205 addresses. I find that *Morabito* is, therefore, distinguishable because it relied on a regulation which has been significantly changed.

In sum, defendants did not have to comply with the prior public notice requirement of § 447.205. That section applies to

changes in payment methods, not changes in Medicaid eligibility requirements.

### III. *Consultation with the Medical Care Advisory Committee*

Plaintiffs contend that they are entitled to summary judgment because defendants failed to consult with a properly constituted MCAC in violation of 42 C.F.R. § 431.12 and N.Y.Soc.Serv.Law § 365–c before implementing the new eligibility requirements. Plaintiffs contend that my decision in *Himes I* was based on an incomplete factual record. They now claim that they have discovered matters during discovery which require judgment in their favor. Plaintiffs maintain that the new income disregards were implemented on January 1, 1991, the day the New York State statute containing the challenged amendments became effective. Defendants contend, however, and plaintiffs apparently agree, that MCAC was consulted six weeks *prior to* publication of the new Regulations in the New York State Register.

42 C.F.R. § 431.12 requires that the MCAC have the "opportunity for participation in policy development." The purpose of the MCAC is to advise the Commissioner of NYSDSS with respect to health and medical care services. N.Y.Soc.Serv. Law § 356–c 2. No where in the federal regulation, or in the state statute which codifies that regulation, is there a requirement that the MCAC be consulted prior to changes in a state *statute*. The MCAC is an advisory committee to the Commissioner of NYSDSS, not the New York State legislature.

Plaintiffs' contention that the MCAC should have been consulted prior to the adoption and implementation of the state statute, seeks to give this advisory committee more power than was delegated to it by 42 C.F.R. § 431.12 or N.Y.Soc.Serv.Law § 365–c.

Plaintiffs rely on *Becker v. Toia*, 439 F.Supp. 324 (S.D.N.Y.1977), for the proposition that a MCAC must be consulted prior to the implementation of a statute which affects NYSDSS policy.

In *Becker*, however, there was no MCAC in existence and there had not been a MCAC for at least three years. The absence of a MCAC is a direct violation of 42 C.F.R. § 431.12 and N.Y.Soc.Serv.Law § 365–c. Such a flagrant violation of a federal regulation and state statute certainly could lead a court to order the drastic remedy imposed in *Becker*. However, even in *Becker*, the court did not grant the relief requested by plaintiffs in this action. The *Becker* court enjoined the implementation of the state statute until a MCAC was constituted and consulted.

In this case, a MCAC was in existence and was consulted prior to the changes in NYSDSS regulations which implemented the new state statute. *Becker*, is therefore, distinguishable. I decline to require that the Commissioner of NYSDSS consult with a MCAC whenever she approaches the legislature on a policy matter. She is, however, required to consult with a MCAC whenever changes are made in NYSDSS regulations. *See Budnicki v. Beal*, 450 F.Supp. 546, 556 (E.D.Pa.1978).

It is undisputed that defendants consulted with the MCAC prior to the implementation of the regulations concerning the income disregards. Defendants have thereby, complied with the requirements of 42 C.F.R. § 431.12 and N.Y.Soc.Serv.Law § 365–c.

Plaintiffs also argue that the MCAC was not properly constituted until June 27, 1991, when a Medicaid recipient was added to the committee. I held in *Himes I* that even if the Court were to assume that the MCAC was not properly constituted due to the absence of a Medicaid recipient on the Committee, plaintiffs nevertheless were not entitled to an injunction on that ground. *Himes I* at 272.

This MCAC complied in many respects with the regulation. While an improperly constituted MCAC may be grounds for granting an injunction, I find that it is not sufficient grounds to grant summary judgment. *See New York City Health and Hosps. Corp. v. Blum*, 708 F.2d 880, 886 (2d Cir.1983) (Refusing to grant declaratory judgment based solely on the lack of consultation with MCAC); *Hospital Ass'n*

**420**

*of N.Y., Inc. v. Toia,* 438 F.Supp. 866, 875 (S.D.N.Y.1977) (Calling into question the magnitude of a remedy for violating the MCAC consultation requirement).

In addition, plaintiffs did not contest the makeup of the MCAC before these changes in the eligibility requirements. Although this may be due to lack of knowledge by plaintiffs, the appropriate remedy is a compliance proceeding, not summary judgment. *Cf. Hospital Ass'n of N.Y., Inc. v. Toia,* 473 F.Supp. 917, 940 (S.D.N.Y.1979).

Several circuits have recognized that the question of relief for a violation of the MCAC consultation and composition requirement is a difficult one. *See Mississippi Hosp. Ass'n, Inc. v. Heckler,* 701 F.2d 511, 523 (5th Cir.1983) ("[W]e are reluctant to read more into a regulatory requirement than is clearly expressed"); and *Burgess v. Affleck,* 683 F.2d 596, 600, n. 6 (1st Cir. 1982) ("The status quo ante cannot be restored; the most that can be ordered is that the state agency reconsider its decision after consultation with the committee"). No amount of additional consultation can cause a reconsideration of the regulations promulgated by NYSDSS here because NYSDSS was responding to changes in the N.Y.Soc.Serv.Law. The MCAC consultation requirement was not meant to address such legislative changes.

CONCLUSION

Defendants' motions for summary judgment are granted. Plaintiff's cross-motion for summary judgment is denied. The complaint is dismissed.

IT IS SO ORDERED.

