Craig HIMES; Kenneth Holz, by his Power of Attorney, Bernice Holz; Bernice Holz; Delores Scott; Willie Brown, Jr., by his parent and next friend Mollie Brown; Mollie Brown; Ryan Trudsoe, by his parent and next friend, Deanna Bennett; Deanna Bennett; Dolores Bragg, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, in her official capacity; Mary Jo Bane, individually and in her official capacity as Commissioner of the New York State Department of Social Services; W. Burton Richardson, Director of the Monroe County Department of Social Services; Karen Schimke, Commissioner of the Erie County Department of Social Services; Rita B. Otterbein, Commissioner of the Wayne County Department of Social Services; Joseph P. Menaldino, Commissioner of the Warren County Department of Social Services; Ruth A. Brandwein, Ph.D., Director of the Suffolk County Department of Social Services, in their individual and official capacities, Defendants–Appellees.

No. 1384, Docket 92–6295.

United States Court of Appeals, Second Circuit.

Argued April 20, 1993.

Decided July 28, 1993.

David Pels, Southern Tier Legal Services, Bath, NY (Ellen M. Yacknin, Greater Upstate Law Project, Rochester, NY, of counsel) for plaintiff-appellant.

Judith L. Pearlstein, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, New York City (Beverly Dennis III, Acting Gen. Counsel, Annette H. Blum, Chief Counsel, of counsel) for defendant-appellee Donna E. Shalala.

Denise A. Hartman, Asst. Atty. Gen., Albany, NY (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Wayne L. Benjamin, Asst. Atty. Gen., of counsel) for defendant-appellee Mary Jo Bane.

Before KEARSE and ALTIMARI, Circuit Judges, and ROBERT W. SWEET, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation.

ALTIMARI, Circuit Judge:

Plaintiffs-appellants, Medicaid applicants or recipients suing on behalf of themselves and all similarly situated persons, appeal from a judgment entered in the United States District Court for the Western District of New York (Larimer, *Judge*) granting defendants-appellees' motion for summary judgment and denying plaintiffs-appellants' cross-motion for summary judgment. Plaintiffs-appellants brought a class action challenging the recent modification of N.Y.Soc. Serv.Law § 366(2)(a)(7) (McKinney 1992). *See* Act of Dec. 21, 1990, ch. 938, § 38, 1990 N.Y.Laws 2034, 2065. The new statute and the regulations promulgated thereunder treat certain categories of payments as available income for purposes of determining Medicaid eligibility that had not been included in the past. Plaintiffs-appellants argue that these new rules violate their rights under the Federal Medicaid Act and that the processes used to implement the new rules violate certain New York State regulations.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Plaintiffs-appellants ("plaintiffs") brought a class action on behalf of Medicaid applicants or recipients who have been informed that their benefits will be reduced or discontinued because their "available income," as calculated under the newly amended N.Y.Soc.Serv. Law, § 366(2)(a)(7) (McKinney 1992), exceeds allowable limits. The new regulations include the following four categories of payments as "available income" for purposes of determining Medicaid eligibility or benefits under 42 U.S.C. § 1396a(a)(17)(B) (1988): (1) court-ordered support payments; (2) income taxes; (3) Social Security contributions; and (4) state disability insurance contributions. Previously, those categories of payments were disregarded in calculating a recipient's available income. Plaintiffs challenged the recent inclusion of these categories in the calculation of "available income" for eligibility purposes. They brought their claim against the Secretary of the United States Department of Health and Human Services [1] (the "Secretary"), the Commissioner of the New York State Department of Social Services, and various other commissioners of local departments of Social Services (collectively herein the "Defendants").

### A. Statutory and Regulatory Framework

The Medicaid program was enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, 1396a–u (1988) ("Medicaid Act" or "the Act"), as a cooperative federal-state program designed to provide health care to needy individuals. Although a state is not required to participate in the Medicaid program, once it chooses to do so it must develop a plan that complies with the Medicaid statute and the Secretary's regulations. See New York v. Sullivan, 894 F.2d 20, 21–22 (2d Cir.1990).

A state, in administering its Medicaid program, must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. See 42 U.S.C. § 1396a(a)(17). Those standards must take into account "only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B) (emphasis added).

States that accept Medicaid funds are obligated to provide coverage to the "categorically needy." See 42 U.S.C. § 1396a(a)(10)(A)(i). These are persons whose income levels allow them to qualify for cash assistance under either the Supplemental Security Income for the Aged, Blind, and Disabled ("SSI") program or the Aid to Families with Dependent Children ("AFDC") program. States also have the option of providing medical benefits to the "medically needy." See 42 U.S.C. § 1396a(a)(10)(A)(ii). These are individuals who satisfy the eligibility requirements of AFDC or SSI but whose income exceeds the maximum income levels permitted under the various cash assistance programs. "Medically needy" persons qualify for Medicaid only after they have incurred medical expenses reducing their income to the eligibility level of "categorically needy" persons. In Medicaid parlance this is referred to as "spending down."

After many states chose to provide coverage to the "medically needy," Congress realized that it was "fiscally improvident to rely exclusively on the States to set income limits for both aspects of the Medicaid program." *Schweiker v. Hogan*, 457 U.S. 569, 575–76, 102 S.Ct. 2597, 2602, 73 L.Ed.2d 227 (1982). Consequently, in 1968 Congress enacted § 1396b(f) (the "FFP cap" or the "FFP limits"), which limits federal financial participation in Medicaid by providing:

the applicable income limitation with respect to any family is the amount determined, in accordance with standards prescribed by the Secretary, to be equivalent to 133⅓ percent of the highest amount which would ordinarily be paid to a family

---

**1.** Plaintiffs originally named Louis W. Sullivan, M.D., as Secretary of Health and Human Services. Donna E. Shalala succeeded Louis W. Sullivan, M.D., as Secretary of Health and Human Services on January 22, 1993. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Department of Health and Human Services requested that Donna E. Shalala be substituted for Louis W. Sullivan, M.D., as a defendant in this suit.

of the same size without any income or resources.

42 U.S.C. § 1396b(f)(1)(B)(i).

New York has chosen to participate in the Medicaid program and has elected to provide benefits to the "medically needy." Prior to January 1, 1991, New York calculated eligibility by using an income methodology that expressly disregarded court-ordered support payments and mandatory payroll deductions in the calculation of countable income. New York has recently changed that policy and no longer disregards those payments in calculating available income for eligibility purposes. *See* Act of Dec. 21, 1990, ch. 938, § 38, 1990 N.Y.Laws 2034, 2065. The following series of events is relevant to understanding why New York reversed its policy.

In September 1985, the New York State Department of Social Services ("NYSDSS"), the agency that runs the state's Medicaid program, submitted amendments to its State Plan ("SPA 85–25") to the Federal Health Care Financing Administration ("HCFA") for approval. SPA 85–25 contained a proposed list of "income disregards," including the court-ordered support payments and mandatory payroll withholdings at issue in this case.

In March 1989 the HCFA issued State Medicaid Manual ("SMM") Transmittal No. 33 addressing states' use of more liberal income and resource methods for determining Medicaid eligibility. HCFA stated that in order for it to assure compliance with FFP limits, it "has elected to disapprove plan policies which will result in FFP limits being exceeded." Health Care Financing Administration, State Medicaid Transmittal No. 33, at 2 (March 1989). HCFA subsequently notified NYSDSS that SPA 85–25 had been partially disapproved. HCFA explained that while the exclusion of certain payments from countable income was permitted under § 1396a(r)(2), the application of such liberal methods remained subject to the FFP limits of § 1396b(f). Because it was possible that the use of the State's more liberal policies could have resulted in the FFP limits being exceeded, HCFA determined that the State's more liberal policies were not acceptable as originally proposed.

In order to bring New York's plan into compliance with the Secretary's directives, the New York State Legislature amended New York's Medicaid statute. Specifically, the legislature deleted income taxes and court-ordered support payments as specific income exemptions when assessing the eligibility of the medically needy. *See* Act of Dec. 21, 1990, ch. 938, Sec. 38, 1990 N.Y.Laws 2034, 2065. HCFA had not specifically mandated that the State of New York make the above changes. Rather, New York, in deciding how to proceed in the joint federal-state program, opted to eliminate the income disregards from its methodology for calculating available income for Medicaid eligibility in order to ensure that the FFP cap provision of § 1396b(f) was not exceeded. New York State could have chosen to use a screening method to ensure that the budget cap was not exceeded, but it claimed that such an option was not feasible. Furthermore, HCFA indicated that such an option would "place a costly administrative burden on [the State] and the Federal government." The new law became effective on January 1, 1991.

On December 28, 1990, NYSDSS notified the various county social service departments of this change in a form administrative letter ("ADM"). The letter stated that the "mandatory payroll deductions and court-ordered support payments are being eliminated as income exemptions. The exceptions will be described in the forthcoming ADM." NYSDSS claims that it promulgated the new regulations on an emergency basis on May 1, 1991. The regulations were then published on May 22, 1991.

### B. *Procedural History*

On September 4, 1991, the United States District Court for the Western District of New York (Larimer, J.) denied the plaintiffs' motion for a preliminary injunction to enjoin defendants from counting as "available income" court-ordered support payments and mandatory payroll deductions in determining Medicaid eligibility. *Himes v. Sullivan*, 779 F.Supp. 258 (W.D.N.Y.1991) ("*Himes I* "). Plaintiffs argued that the inclusion of these payments violated their rights under the

Federal Medicaid Act and that the processes used to implement New York State's new rules violated certain New York State regulations. The district court found that plaintiffs could not demonstrate a likelihood of success on the merits because the Secretary's rational construction of the term "available income" in 42 U.S.C. § 1396a(a)(17)(B) deserved substantial deference, and that NYSDSS had complied with both the notice and consultation requirements mandated by federal regulations.

This Court affirmed the district court's denial of plaintiffs' motion for a preliminary injunction by Summary Order filed January 13, 1992. Subsequently, plaintiffs and the defendants filed cross-motions for summary judgment in the district court. In their motion for summary judgment plaintiffs relied on essentially the same arguments previously asserted in their motion for a preliminary injunction, but contended that the result should be different because of certain facts obtained during discovery. Specifically, plaintiffs uncovered three references in a supplement to the Department of Health, Education, and Welfare's "Handbook of Public Assistance Administration" ("Handbook") which define available income as resources which are "in hand." Notwithstanding this new evidence, the district court issued an opinion and order granting the defendants' motions for summary judgment and dismissing the complaint. *Himes v. Sullivan*, 806 F.Supp. 413 (W.D.N.Y.1992) (*"Himes II "*). The District Court adopted its analysis from *Himes I*, and additionally pointed to recent case law in two other circuits upholding the Secretary's interpretation of "available income" under 42 U.S.C. § 1396a(a)(17)(B) as a permissible construction of the statute. *See Peura v. Mala*, 977 F.2d 484 (9th Cir.1992); *Emerson v. Steffen*, 959 F.2d 119 (8th Cir. 1992). The district court determined that § 1396a(a)(17)(B) did not on its face prohibit inclusion of court-ordered support payments or mandatory payroll deductions, that the Secretary's interpretation of "available" was reasonable, and that deference should be given to the agency's interpretation of the statute whether or not there had been consisten-

cy in its interpretation of available income in New York State.

Plaintiffs now appeal.

## DISCUSSION

Because the district court's decision was by summary judgment, this Court must review that decision on a *de novo* basis. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991). We will therefore revisit the following issues: (1) whether the Secretary's interpretation of "available income" under the Medicaid act does not deserve the usual deference due an agency's interpretation of an act that it administers because her current interpretation is at odds with a previous interpretation; (2) whether New York State failed to comply with the advance public notice requirement when it issued its new Medicaid income exclusion rules; and (3) whether New York State violated the statutory requirement to consult with a properly constituted Medical Care Advisory Committee.

I. *Secretary's Interpretation Concerning Available Income*

A. *Plain Meaning of Statute*

Plaintiffs contend that by counting court-ordered support payments and mandatory payroll deductions when calculating "available income" in determining Medicaid eligibility, the defendants are in violation of the clear requirements of the federal Medicaid statute. Plaintiffs further claim that the Secretary's interpretation of the statute should be given no deference because it is a recent interpretation, which, according to plaintiffs, conflicts with the Secretary's earlier interpretation of what constitutes "available income." We disagree.

On review of an agency's construction of a statute that it administers, a court must first determine whether the plain language of the statute speaks directly to the issue. *See Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress has directly addressed the matter, the court as well as the agency must give effect to congressional intent. *See id.* at 842–43,

104 S.Ct. at 2781–82. If, however, Congress has not directly addressed the matter at issue, then the court must determine whether the agency's construction of the statute was a permissible one. *See id.* at 843, 104 S.Ct. at 2782.

■ In determining whether the Secretary's construction is permissible, a court need not find that it would have interpreted the statute in the same manner. *See id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Rather, a court must uphold the agency's interpretation unless it is an impermissible construction of the statute. *See id.* at 843, 104 S.Ct. at 2782. Moreover, "courts must exhibit particular deference to the Secretary's position with respect to legislation as intricate as [Medicaid]." *DeJesus v. Perales,* 770 F.2d 316, 327 (2d Cir.1985), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986).

Plaintiffs argue that in this case the Secretary's interpretation is exactly the type of construction of the statute that cannot be upheld. In regard to setting eligibility standards, the statute mandates that those standards must take into account "only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B) (emphasis added). According to plaintiffs, the plain meaning of the statutory provision establishes a principle of "actual availability" that requires the exclusion of mandatory payroll withholdings and court-ordered child support obligations from "available income." Therefore, they claim that the Secretary's interpretation is at odds with the plain meaning of the statute and congressional intent.

■ Plaintiffs claim that "available" is an adjective meaning "suitable or ready for use or service; at hand ... readily obtainable; accessible." *Random House Dictionary of the English Language* 142 (2d ed. unabridged 1987). They cite *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980), in claiming that this dictionary definition of available should be dispositive. In *Consumer Product,* the Court looked to the common usage of the term "public" to determine its meaning in the context of the Consumer Product Safety Act. *See id.* at 108–09, 100 S.Ct. at 2056–57. In that case, however, Congress had not left the responsibility for defining the term to the Commission. Because here Congress has expressly delegated authority to the Secretary to define the meaning of "available," we find plaintiffs' reliance on *Consumer Product* and the dictionary definition misplaced.

Although the committee reports and legislative debates make reference to "actual availability" when discussing the provision, such discussions make no reference to the exclusion for court-ordered child support payments or mandatory withholdings from income. Rather, the legislative history clearly indicates that any reference to "actual availability" was intended to guard against the false attribution of unrealized income from one individual to another. When Congress spoke of actually available income, it indicated its concern about the unfounded attribution of income from relatives, a prevalent state practice at the time. *See* S.Rep. No. 404, 89th Cong., 1st Sess. 78, *reprinted in* 1965 U.S.C.C.A.N.1943, 2018 ("Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual."). Furthermore, in the context of an AFDC case, the Supreme Court examined the genesis of the "actual availability principle" and found that it "served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it." *Heckler v. Turner,* 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985).

Finally, two other Courts of Appeals have ruled on the exact provision in issue here, and have upheld the Secretary's interpretation. *See Peura v. Mala,* 977 F.2d 484 (9th Cir.1992); *Emerson v. Steffen,* 959 F.2d 119 (8th Cir.1992). We find these decisions persuasive.

Accordingly, because neither the direct language of the statute nor the legislative history supports the plaintiffs' interpretation, and § 1396a(a)(17)(B) explicitly confers on

the Secretary the authority to give substance to the meaning of the term "available," *Chevron* dictates that we defer to the Secretary's interpretation.

### B. *Change of Position*

■ Plaintiffs maintain that the Secretary's interpretation should receive little or no deference because it represents a reversal of long standing policy. Through discovery, plaintiffs have been able to find three references in a supplement to the Department of Health, Education, and Welfare's Handbook which define available income as resources which are "in hand." Furthermore, New York Medicaid plans containing the exclusions at issue have been approved by the Secretary from 1966 until 1989. Plaintiffs contend that this is evidence that the Secretary has changed her position on the definition of available income, thus requiring that less deference be given to the current interpretation.

Defendants contend that the Secretary has always been consistent in her policy. According to defendants, by altering the text, the Secretary, at most, sought to clarify her policy. This policy, from the inception of the program, was that available income was an inclusive term and that the only income a state must disregard was that income disregarded under the categorical cash assistance programs. Defendants further contend that the Handbook provisions relied on by the plaintiffs were taken out of context. Therefore, according to defendants, the Secretary's interpretation of the statute does not represent "a major policy reversal."

We find it difficult to discern the exact intent of the Handbook provisions. It is clear that the Secretary has never *required* that states disregard the categories of income at issue here. It is equally clear, however, that the Secretary has previously approved New York Medicaid plans that contained the exclusions at issue, and has only most recently disapproved such a plan. Accordingly, the Secretary has undoubtedly shifted her position.

This shift in position, however, is not enough to cause this Court to ignore the deference normally due the Secretary. The Supreme Court has stated:

> This Court has rejected the argument that an agency's interpretation "is not entitled to deference because it represents a sharp break with prior interpretations" of the statute in question.... An agency is not required to " 'establish rules of conduct to last forever,' " but rather "must be given ample latitude to 'adapt [its] rules and policies to the demands of changing circumstances.' "

*Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991) (citations omitted). The issuance of SMM Transmittal No. 33 does not represent an inexplicable, sharp break from the past. Rather it is a reasonable attempt to interpret and apply all sections of the statute, including § 1396a(r)(2) added in 1988, dealing with the use of more liberal income disregards. Because the circumstances surrounding the issuance of SMM Transmittal No. 33 and approval of New York's changed eligibility rules provide sufficient justification of the Secretary's current policy, deference is still due her interpretation.

As stated by the district court, an inconsistent position alone is not enough to require this Court to give less deference to the Secretary's definition of available income. *See Himes II*, 806 F.Supp. at 417, *cf. Lewis v. Grinker*, 965 F.2d 1206, 1223 (2d Cir.1992) (giving the Secretary's position less deference because it was the " 'rare and exceptional circumstance' " where the application urged by the Secretary "would fly in the face of legislative history"); *New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854, 858 (2d Cir.) (refusing to defer to the administrator's interpretation in this "rare" instance because the Secretary's policy was inconsistent and the regulation was at odds with the clear intent of the statute, both facially and as elaborated by legislative history), *cert. denied* —— U.S. ——, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992).

Accordingly, even though the Secretary's interpretation is arguably inconsistent from her past interpretation, her current interpretation is not at odds with the plain meaning

of the statute, is reasonable, and should therefore be accorded the usual deference.

## II. *Consultation with Medical Care Advisory Committee*

■ Every state that wishes to participate in the Medicaid program is required to create a Medical Care Advisory Committee ("MCAC") as a condition of participation. *See* 42 C.F.R. § 431.12(b). The role of a MCAC is "to advise the Medicaid agency about health and medical care services." *Id.* § 431.12(a). To ensure that a MCAC has an opportunity to fulfill its purpose, federal regulations provide that a MCAC "must have opportunity for participation in policy development and program administration." *Id.* § 431.12(e). Plaintiffs contend that they are entitled to injunctive relief because defendants failed to consult with a properly constituted MCAC in violation of 42 C.F.R. § 431.-12(b), (d), (e) (1992) (the "MCAC Regulations") and N.Y.Soc.Serv.Law § 365–c (McKinney 1992). We disagree.

On December 21, 1990, in order to bring its state plan into compliance with the Secretary's directives (SMM Transmittal No. 33), the New York State Legislature amended New York's Medicaid statute. Effective January 1, 1991, New York no longer exempted payroll deductions for income taxes, FICA insurance, or court-ordered support payments when calculating available income. *See* Act of Dec. 21, 1990, ch. 938, Sec. 38, 1990 N.Y.Laws 2034, 2065. In response to the legislature's actions, NYSDSS began the process of implementing the legislative changes.

Plaintiffs first contend that defendants violated the MCAC Regulations by their failure to consult with a MCAC at the policy development stage. Defendants argue, and the district court found, that the MCAC Regulations do not apply because the substantive changes were made by the State Legislature. We agree. The MCAC is merely an advisory committee and its consent is not needed before a state can change its law. When the change at issue is merely the implementation of the state legislature's policy choice, there is no policy development at the agency level

and therefore no need to consult with the MCAC.

Plaintiffs next contend that the MCAC consultation that occurred at the program administration level did not comply with the MCAC Regulations because the MCAC was not properly constituted. We see no need to address the adequacy of the constituency of the MCAC in this case. Because the change was already adopted by the state legislature, it was a *fait accompli,* and any consultation prior to the promulgation of the agency's conforming regulations would have been meaningless. Accordingly, an injunction requiring consultation would have been purposeless.

In sum, because the actions taken by defendants were non-discretionary responses to legislative action, the MCAC Regulations were inapplicable.

## III. *Public notice*

■ Federal Regulation 42 C.F.R. § 447.-205(a) requires a state Medicaid agency to provide public notice of proposed changes in its methods and standards for setting payment rates for services. Plaintiffs argue that an injunction is appropriate because the defendants did not comply with this regulation. Defendants assert that they did not have to comply with the regulation because it does not apply to changes in a Medicaid agency's eligibility policy. Instead, defendants argue, and the district court found, that the public notice requirements pertain to changes made by a Medicaid agency in its reimbursement rates to providers. We agree with the district court's finding that the pre-implementation publication requirements, as amended, do not apply to the Medicaid program changes at issue because they were meant only to apply to significant changes in "methods and standards for setting payment rates" and for reimbursing Medicaid providers.

The language of the regulations is dispositive of the question at issue. The title of the subpart that contains § 447.205 is "Payment Methods: General Provisions." The preamble to this subpart states that it "prescribes State plan requirements for setting payment rates to implement, in part, section 1902(a)(30) of the Act [42 U.S.C.

§ 1396a(a)(30) ], which requires that payments for services be consistent with efficiency, economy, and quality of care." 42 C.F.R. § 447.200. Section 447.205 states in pertinent part that "the agency must provide public notice of any significant proposed change *in its methods and standards for setting payment rates for services." Id.* § 447.205(a) (emphasis added).

Plaintiffs argue for a broader reading of the section than its plain language indicates. They rely on *Morabito v. Blum,* 528 F.Supp. 252 (S.D.N.Y.1981), to contend that the advance publication requirements apply equally to changes in the Medicaid program that directly affect Medicaid recipients, such as eligibility and cutbacks in services. In *Morabito,* the court rejected the defendants' argument that § 447.205 was intended to protect only Medicaid providers, and stressed that the regulation addresses itself to the public rather than health care providers. *See id.* at 270.

*Morabito* is not applicable, however, because the regulation has been amended since it was decided. *See Fulkerson v. Commissioner, Me. Dep't of Human Services,* 802 F.Supp. 529, 536 (D.Me.1992) (holding that the changes in the regulations since *Morabito* now render § 447.205 inapplicable to changes in state plans which do not involve rate-setting standards or methodology); *Philadelphia Welfare Rights Org. v. O'Bannon,* 517 F.Supp. 501, 507 (E.D.Pa.1981) (upholding Secretary's interpretation that 42 C.F.R. § 447.205 relates only to payment rates and methods and did not apply to a termination of coverage for adult eyeglasses) *aff'd,* 681 F.2d 808 (3d Cir.1982).

Thus, as the district court observed, "[t]here is nothing in the language of the regulation, the comments received while changes were being considered, or HCFA's explanation of the changes and purpose of the new regulation, which suggests that it was ever meant to address the issue of Medicaid eligibility." *Himes II,* 806 F.Supp. at 418.

We conclude that the notice requirements apply only to changes in rate setting methodology and not to changes in eligibility requirements. Accordingly, we affirm the dis-

trict court's holding. Because we find that the language of the statutory provision is dispositive of the issue, there is no need to address the applicability of the legislative exception.

## CONCLUSION

Based on the foregoing, the decision of the district court is affirmed.